Good morning, your honors. My name is Ben Davis, and I'm here from the Federal Defenders of San Diego on behalf of the appellant, Jorge Wernick. I'm going to keep an eye on my clock, but I'll try to reserve two minutes for rebuttal. At the in limine motions, the trial court expressly prohibited the government from putting on evidence of the structure and the modus operandi of drug trafficking organizations. And as the government has conceded in its papers, no such evidence was admitted at trial. Despite that prohibition, and despite that lack of evidence, the government nonetheless told the jury in closing, first, that Mr. Wernick was working for a drug trafficking organization, second, that the prosecutors personally believed this to be so, and third, that Mr. Wernick's characteristics on the day of his arrest fit those of a trusted drug courier. These comments, both independently and in conjunction with the other errors that I've identified, deprived Mr. Wernick of a fair trial and tipped a close case over the edge. And as I discuss this and the other errors, I'll ask the court to keep in mind that this was a close case that ultimately boiled down to whether or not the jury credited Mr. Wernick's testimony. In such a close case, telling the jury that the government personally believed Mr. Wernick fit the profile of a trusted drug courier, baldly labeling his uncontradicted testimony a lie and eliciting testimony about nervousness that depended on an agent's... Where is the line between testimony regarding unknowing drug couriers and testimony regarding drug trafficking organizations? Because some argument regarding unknowing drug couriers is permitted under the law, isn't it? That's correct, Your Honor. This court in Pineda-Torres did make a distinction between testimony about the structure of drug trafficking organizations that talks about the different roles that different people play and simple testimony about an unknown courier. So in this case, was there testimony introduced about a drug trafficking organization or what role defendant played in that organization? Well, no, Your Honor. There was no testimony at all about any of these things. My argument is that the government argued that in closing despite the lack of any evidence. The government told the jury that there was a drug trafficking organization involved. It used that phrase a couple of times and it referenced the drug traffickers that were involved and said that they believed that the drug trafficking organization was calling Mr. Warnick's phone. And it used the phrase a trusted drug courier and it described the different tendencies that it believed a trusted drug courier possessed and how Mr. Warnick fit those characteristics. None of that was based on evidence that had been introduced at trial. There was no expert evidence about drug profile. There was no evidence about drug structure. And I think that your question, Judge Nguyen, is about whether there's a line between simple structural organization and profile courier testimony. And I think this court has said when it's talked about structural organization, that structure means the operation and structure of drug trafficking organizations, including testimony about the typical travel itineraries of drug couriers, how drug traffickers do not trust large quantities of drugs to people who are unaware that they're transporting them and the value of the drugs. And that's from Sepulveda Barraza. And the reason I ask that is that in closing, the government did make repeated references to trusted drug courier. But they did that and linked it directly to an inference of knowledge given the evidence in the case. And why is that not appropriate? Well, I disagree with that characterization. I think that if they had done that, I think that would have been appropriate. But I don't think that's what they did. In the section that I think is the most egregious, the trusted drug courier litany, what the prosecutor did was it phrased a series of questions and then told the jury the answers to the questions. It said, who carries one key with him? I'll tell you who does that. A trusted drug courier does that. Who carries two telephones with him? A trusted drug courier does that. Those are asserting facts that were never put in evidence. There was never any testimony about the significance of a single key. There was no testimony about the significance of two cell phones. They could have argued perhaps, you know, you can infer. That's what I was going to ask you. Could they have said the evidence is the two telephones, those other things, and said you can draw the inference from those facts that he must be a trusted drug courier? Yeah, I think that would have been at least closer to the line and appropriate to say that these facts were in evidence and we urge you to draw this inference. But your objection is that they drew the inference and said put their strengths as prosecutors behind? Well, my objection is, Your Honor, is that they essentially sketched out characteristics of a trusted drug courier. And the word trusted I think is important. I'll come back to that in a little bit. But they sketched out these characteristics and they essentially told the jury because Mr. Warnock fit these characteristics, because he had one key, because he had two telephones, because he had a borrowed car. So is it the word trusted then? I'm not sure that I see much of a distinction between the argument that you, in response to Judge Reinhart's question, said would have been acceptable and the argument that the government did in fact make in this case. So if the government had said who shows up at the port of entry with almost $50,000 worth of illegal drugs in a car that's registered to someone else? A trusted drug courier, that's who. And that's the pattern that they repeated over and over again. Who drives through the border with a car with its compartment that's built specially for trafficking drugs? A trusted drug courier, that's who. Now, if they hadn't said the word trusted and they said who shows up in a car with a specially built compartment for carrying drugs, a drug courier, that's who, would that have been okay? No, Your Honor. I don't think it would have been. I think that the word trusted makes it more egregious because it implies. So it's the word trusted. If they just said who does this? A drug courier does this. And that's linked directly to the evidence. That would have been okay. But the word trusted drug courier is not okay? No, Your Honor. I'm sorry. I may not have been clear in my answer. I still think it would have been inappropriate to answer the question a drug courier. Because what it did is it told the jury that this is what a drug courier looks like. And it's really a couple of the pieces of evidence are really the ones that I'm talking about. Didn't the district court grant your client's motion in limine to exclude evidence about characteristics of drug trafficking organizations and characteristics of the couriers? Yes, Your Honor, it did. And there was no evidence put on the trial. The government did abide by the court's granting our motion to exclude all such evidence. And that's why I think that when they argued it in closing, it was, you know, improper. Is there a difference between saying to the jury, repeating all those facts, and saying you may infer from those facts that he was a drug courier, and saying this is what a drug courier does?  And it's the type of vouching that this Court has talked about in the Kajian opinion. But if the court has excluded that evidence when it granted the motion in limine, how can you say that? Well, Your Honor, I think certainly the court excluded the evidence about the characteristics of drug trafficking organizations. I think Judge Reinhardt I took care of. You said to exclude evidence about drug trafficking organizations and their couriers. Yes, Your Honor. That's why I think the argument was improper, because I think it did reference facts that the government knows, such as what a drug courier looks like, that were not put on the evidence. Well, if they had told the jury, here are the facts, and then said we ask you to infer from those facts, is that the difference between that would be permissible? But to say to the jury, here are the facts, that means they're drug couriers. There are all kinds of lines on these prosecutorial closing argument cases, and they don't always make a great deal of sense to me. But as I'm trying to find the difference here, and the difference, I'm asking whether this is what they're saying. The difference is they not only ask the questions, but they told them their answer, that they said this is what a drug courier is, instead of saying you may infer from this. Is that the difference? Yes, Your Honor, and I'll answer your question and respectfully reserve the remainder of my time. The difference is that one is persuasive argument. One is saying to the jury, look, here are the facts that were admitted at trial. We're asking you to draw some logical inferences that are within the realm of common knowledge that you as jurors possess. What the prosecutors did here was they said, look, here are some characteristics. We are telling you that this is what a trusted drug courier, someone who works for a drug trafficking organization, looks like. This person meets these characteristics. And they were asserting facts that were not in evidence that had been excluded from the trial. And they then doubled down on that by saying that they personally believed them to be true in the we believe comment that I identified in my papers. With respect, Your Honors, I'll reserve what little time I have left. Thank you. Good morning. May it please the Court, Tara McGrath of the United States. Were you the trial counsel in this case? Yes, Your Honor. I was one of the trial counsels on this case. There was one mention in closing that I think really did cross the line, and that's the reference to drug trafficking organization. There were two phones found on the defendant. One had lots of pictures and texts, and then the other one had virtually nothing. I think it's certainly fair to argue the inference that the phone with virtually no information might have been reserved for drug trafficking activities. But in light of the Court's ruling on the motion limine, why was it even appropriate to mention drug trafficking organizations looking for their load when that second phone rang? Your Honor, I think that there are two important points that need to be clarified at the outset about that. In the opening closing argument, the words drug trafficking organization were not presented to this jury. The argument was focused on trusted drug courier. And in that argument, my co-counsel who made the opening closing argument, he referenced repeatedly all of the facts. He began his argument by setting out the facts of the case, the evidence before the jury. Then he went into the trusted drug courier phase. He marshaled all of those facts together, and then for each of those facts referenced who does this, a trusted drug courier. It was all in reliance on the evidence that he was linking through that theme about trusted drug courier. The question that Your Honor asked about the point made in the rebuttal close, that was my statement. I said it, and it was an incorrect thing to say. I shouldn't have said it. It was in rebuttal. It was not rehearsed. And it was ill-advised. And I didn't say it because we were trying to wink-wink, nod-nod to this jury and say, we know something you don't know. It was not the theme of our case by any stretch of the imagination. The link that has been made in the appellant's briefing that the government was trying to sort of wink-wink, nod-nod that there was some sort of drug trafficking organization is wholly outside of what was actually before this jury. What was actually before this jury was the defendant's credibility. He put his credibility at issue. Whether he knew that those drugs were in the car he was driving, he testified. And in that testimony, he stated that he didn't know that he was driving drugs and that somebody set him up, that there were others involved who set him up. When we were arguing the trusted drug courier point in the closing argument, we were speaking directly to his credibility. And I agree that the word trusted is what seems to be of concern here. But the word drug courier, he was driving drugs across the border. He was a drug courier. The question of whether he was a trusted drug courier was the argument we were making synonymous with his knowledge. He knew there were drugs in that car. He was trusted with nearly $50,000. On the low end, $32,000. On the high end, $48,000 worth of a commodity. He was trusted with that commodity. It's well within the bounds. It's well within the leeway of what a government counsel can argue based on knowledge of, knowledge that the defendant himself put at issue here. The... You know what the problem is in these cases? You try, you over-try them. You don't have confidence in the intelligence of the American jury. See, you don't have to go through all of that. All you do is create issues. I mean, here he was. You have a sailor, right? So that's a good thing for him. And, but he's down there. He makes all these trips, what, 11 trips in a month? That's correct, Your Honor. Okay. And then he stops. He's driving this car. It's hard for me. I haven't seen a picture of it. And the agent at the border, he takes a look and he sees that the vents are stuffed. Is that right? That's correct, Your Honor, yes. And so they bring it over to the secondary. They take the stuff out. And here's a pretty large quantity of drugs, right? Yes, Your Honor, 80 pounds. Okay. And he said he would go to a mall in Chula Vista. That's right, Your Honor. He testified that he was going to a mall. Did anybody ask him what he was buying at the mall? Your Honor, his testimony was that he was going to a mall to rent a car. And he was doing that in a car that he had borrowed from someone who must have set him up by putting drugs in the car. Notably, about his testimony on that point, he testified that the people who lent him the car didn't actually, weren't actually able to cross into the United States and didn't know exactly where he was going. If I may, Your Honor, I want to address one important point that counsel raised, which is that he You have to go through all of this stuff that the court already in limine motion excluded from evidence. Your Honor, we listed. You can't let the jury sit there and figure this out for itself? What's going on? You afraid to do that? No, Your Honor. We did that in this case. We listed out each piece of evidence. Why do you have to do that? The evidence is there. You just call their attention, well, this is what the evidence shows, and you sit down. We did that in this case. No, but then you have to go into hammer and hammer the trusted drug courier in the face of the court's in limine ruling. Your Honor, that was in The government, you know, this is my experience. I've been doing this for a long time. And the municipal court, the superior court, the U.S. District Court, you know, the best trial lawyers that I've been involved with in the past have been the older DAs. And it would take them in a case like this probably 15 minutes, 10 minutes of argument. They sit down. They look at the jury and say, what else do you need? You know, that was it. And the cases would go. Your Honor, in this Not you guys. You've got to argue for two hours. You've got to go on and on and on and on. And then you make all of these mistakes. Your Honor, I admit that there was one mistake made in our argument. But the trusted drug courier, I don't, I do not agree respectfully, Your Honor, that that was What difference does it make whether the trusted drug courier is a drug courier? Because he put his credibility at issue and he testified that he didn't know. This whole case was about his knowledge. We were in the position at closing argument of we had to emphasize all of the points that lent to his knowledge, all of the pieces of evidence that established that he knew that there were drugs in the car. We had to argue that to this jury. You did have to argue that. You could say, look, here are all the facts. You know, what do you think? Instead of telling them what you think, you ask them, you know, make a judgment from those facts. Who do you think would do this? That's up to you. But you say to them, here are the facts. Now, we know that that means he's a drug carrier. But, Your Honor, we didn't say we know that means he's a drug courier. We didn't say that. I'm sorry if I misunderstood your question. You're supposed to be the government, huh? Yes, Your Honor. You're really the prosecutor. You're not the government. You know, you like to say you're the government. We're all part of the government. You know, we ought to just say, we're the prosecution. But, you know, you say you're the government, and everybody thinks about it. They all say we're the government these days. Nobody likes the government. Nobody likes the government anyway. Judge Reinhardt's. But we are the Congress. You see the difference? You do say to them, here are the facts. Now, who would do this? We're telling you it's a trusted drug carrier. And the defendant put an issue that he hadn't been trusted by anybody because he didn't know the drugs were in the car. Let the jury figure it out. They're not stupid. But, Your Honor, that's the prerogative in closing argument is to argue. You can exercise a lot of prerogatives, but you can foul things up, too, you know. I don't disagree with that, Your Honor. That's overkill. Let me ask you one question. The district judge said it was a closed case. Your Honor, thank you for asking that question. I want to emphasize the point that she did not. In fact, she said the opposite. Strong were her exact words. She said, and when she said closed case, she was speaking to whether the adjustment for an obstruction of justice should apply at sentencing. She was talking about the plus two adjustment. She spent 20 pages in this record, from 20 to 40 in the excerpts of record. She spent talking about obstruction of justice. And when she said close call, she was talking about whether the two-level adjustment should apply. She, in fact, said certainly substantial evidence of his knowledge exists for the conviction. And then she said all of the other evidence strongly indicates by proof beyond a reasonable doubt that he did know. She did not make, and that's on page 41 of the record. She was not making a comment on the closeness of the case, but rather the closeness of whether she should apply the obstruction of justice enhancement. And there are pages and pages in this record where she talks about the strength of the evidence. And the strength of the evidence is overwhelming in this case. And I detail it in our brief at pages 34 and 35. But the fact that the drugs were visible through the dashboard, that the packages could have fallen out at the defendant's feet as he was driving, that the vehicle could only travel 40 miles. You think you had a good, strong case. Your Honor, there was a great deal of evidence here. You had a good, strong case, huh? Your Honor, there was. But you like to muck it up, too, huh? Well, Your Honor. That's what you did. I recognize that there was an ill-advised, frankly, just I shake my head every time I think about the thing that I said in rebuttal. But the trusted drug courier argument. That's because you're insecure. You want to get everything in the world in there. Your Honor, I absolutely have very little. You're saying that there was one, I think maybe two references to drug trafficking organizations done in rebuttal. And so what the government's position is that those references to drug trafficking organizations were inappropriate in light of the motion limiting ruling. But the argument regarding trusted drug couriers arguing the inference from the evidence to demonstrate knowledge, is that the government's position? It is, Your Honor. And there was only one reference in the rebuttal argument. And it wasn't repeated. I said it once. I didn't say it again. And I, in fact, tried to cure it. I said it on page 380. On 381, I go back and I say to the jury, it could have been a person. It could have been an individual. It could have been an organization. I recognized I made a mistake and I tried to fix it. It was not a central theme of our closing. After emphasizing that the district court found that there was a great deal of evidence here and that she believed it was strongly in the, that the evidence weighed strongly in favor of the guilty verdict that the jury found, I also want to point out, if I may, that she gave ample instructions in this case, that any concern that the court has about whether this, what this jury inferred from the arguments, the district court established a good, very well, the jury was very well instructed. That's the point I'm trying to make. And that she gave those instructions in repeated places in the record. And she also emphasized all of the burdens on the government. And defense counsel himself emphasized in his closing argument that arguments of counsel aren't evidence. So even if there was an error here, which the United States doesn't concede that there was an error with regard to the trusted drug courier argument, but even if there was an error, it was harmless because it was cured by instructions and the evidence in this case was overwhelming. The jury looked at the evidence. They evaluated. You know what Judge Noonan says about harmless error. It's the last refuge of the scoundrel. I am aware of that quote, Your Honor. But I want to emphasize it here because I recognize that the court is concerned about the argument we made. And I want to emphasize that this jury was well instructed. There was a great deal of evidence. And that when they went back with the evidence. Can I ask a question? What's the conviction rate in the Southern District when you go to trial? Tell me what it is. Your Honor, I'd be speculating. I don't know that statistic. You know. I don't know the statistic, Your Honor. It's pretty high everywhere. Is it higher in the Southern District? It's close to 100 percent, right? I don't know how close to 100 percent. We certainly, I've acquitted cases. Well, I've been, I've had juries acquit cases that I've brought to trial in the Southern District, certainly. And I've had juries hang cases. You should have made a stronger closing argument. Well, Your Honor, I do want to emphasize that at no point was my co-counselor or I trying to do something sneaky. We were not trying to do that. No, no. We're not saying you tried to do something sneaky. And I also want to emphasize that I recognize the mistake that I made. And I have shared with my colleagues. I've talked to our crim chief. I've talked to our appellate chief about. But you're the government. You've got to be perfect. Well, and, Your Honor, that's the objective that we strive for. I personally strive for it. My co-counsel in this case strived for it. And in this case, the jury evaluated the evidence. They looked at the witness credibility. They evaluated the credibility of the defendant's testimony. And they determined beyond a reasonable doubt that he knew those drugs were in that car. And so we respectfully request that the court uphold the verdict in this case. Thank you. Thank you, Kenneth. Okay. All right. Your Honor, I only have about ten seconds, so I'll just. We may have some questions that can't be answered in ten seconds. Okay. First, Your Honor, I'd like to address the issue of the jury instructions. The jury instructions were boilerplate. They were the standard instructions that the court gives on arguments of counsel. There was no specific curative instruction in reference to the arguments that I've made. So I don't think that the ordinary jury instruction can have cured any of the errors that I've identified. Other than the reference, the single reference, the drug trafficking organization that counsel raised in rebuttal, what other facts, now setting aside the trusted drug courier, what other facts did counsel argue in closing that was not introduced into evidence? Was there anything else? No, Your Honor. In terms of facts not in evidence, it's really the facts about what a profile of a Is it fair to say, then, that this boils down to whether the government legitimately argued the inference of knowledge based on the evidence that was admitted before the jury? As to this issue, yes, Your Honor. I think had the government appropriately argued it as an inference, persuasively argued and said this is what we are asking you to find, that would have been different. My contention is what they did is that they told the jury, these are true facts, this is what a drug courier looks like, he's working for a drug trafficking organization. And that's what I think the difference is. I'm not going to, unless the court has questions about the other issues I've raised about the repeatedly calling my client's testimony lying and a lie and some of the other, the nervousness. Is it right that the district court thought that the evidence as to knowledge was compelling? Well, Your Honor, it's a little bit unclear. She specifically declined to find that he committed perjury. The government argued very strongly for a perjury enhancement. And in order to apply the obstruction of justice, the district court has to find that he committed perjury. And she didn't do that. And we argued that for a long time at the sentencing hearing. And she went back and forth. And she said, no, I don't think that there's evidence to say that he committed perjury. So he denied on the stand that he knew about the drug. So if the district judge declined to determine that that was perjury, I think that that shows that she at least found the case was close. She did say that it's a circumstantial evidence case. There's no confession. It's not beyond the realm of possibility that a girlfriend in Tijuana set somebody up. She said, I believe that happens. People do get set up. I think in the context of when she was talking about the strength of the evidence, there's a couple things. First, the district court never explicitly ruled on our Rule 29 motion. She reserved it when we made it at the close of the government's evidence. And she didn't comment on it when we raised it at the close of our evidence. So I think that that may have been some of the context at the sentencing hearing when we were talking about the trial issues, that she was affirming that, you know, a reasonable juror could have found guilt, which I — And you never really know what influences a jury. Well, I agree. We don't really know what it is that, you know, it could be. Well, the government is there and they're telling us this, this, this, that. Trusted drug courier. I very much agree, Your Honor. And I do think that this case was close. The evidence that the government brought was, you know, circumstantial for sure. They had that he was in a car, that it was loaded full of marijuana, that the We elicited in our case that my client testified they didn't look into the vents. The secondary officer said you could not see the packages from inside the car, that you had to get up close and then really peer into the vents to find them. Just in the vents. Could you smell it? No, Your Honor. There was actually extensive testimony about the lack of smell from the packages at the trial. That was a topic that we covered. So it really boiled down to — Did you have the dogs there? The dogs smelled it, Your Honor. The dogs. The dogs can smell anything is what I'm told. But nobody could smell it. Once you start interrogating the dogs, then you're in trouble. I agree. Yeah. But it really boiled down to whether or not the jury believed Mr. Warnick's testimony. I think that that's why the case was closed. That's why, perhaps, I'm not trying to impugn the motives of the government, but that's why they pushed in the closing argument. I think that's why the other prosecutors simply asserted repeatedly that my client's testimony was a lie without tying it to specific contradictions in his testimony. I think all of those things combined to push what was a pretty close case over the edge. And as you point out, Judge Gregerson, we can't know what determinations the jury made. Just very briefly, I would like to address cumulative error. I think that — Is this a case where the argument was that the defendant is a liar? Yes, Your Honor. The prosecutor in the closing argument repeatedly referred to Mr. Warnick's testimony as a lie, a flat-out lie, a total fabrication, completely absurd, without tying those phrases to contradictions in his testimony. In terms of cumulative error, Your Honors, I do think that a number of these errors warrant reversal independently. But I think in the closeness of this case — We didn't have that argument to begin with. We didn't raise that. Your Honor, I did raise cumulative error in my brief. I know, but it hadn't been argued. No, that's true. The government hadn't had a chance to respond. I agree, Your Honor. So it's not fair to them. Understood. Thank you very much, Your Honor. Thank you. All right. The matter is submitted.
judges: Pregerson, Reinhardt, Nguyen